UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
Brooks Banker,                                  :
                                                :
                        Plaintiff,              :
                                                :
-against-                                       :               06 Civ. 4998 (BSJ)
                                                :
Amy Ai, 51 West 81st Street Corp.,              :
Rudd Realty Management Corp.,                   :
Esther Zelmanovitz, Stanley Tischler            :               ECF Case
and Lois Ebin,                                  :
                                                :
                        Defendants.             :
-------------------------------------------------------x

## Complaint

Brooks Banker, by his attorney, as and for his complaint against Defendants

alleges as follows:


<u>Parties</u>

1.      Plaintiff Brooks Banker ("Plaintiff") is an adult individual and a resident

of the State of Pennsylvania with an address at Solverson Road, Rowland,

Pennsylvania.


2.      Defendant Amy Ai ("Amy Ai") is an adult individual and a resident of the

State of New York with an address at 333 East 34th Street, New York, New York.

Amy Ai is also uses the names Amy Ai Banker and Amy Banker.

3.          Defendant 51 West 81st Street Corp. ("Co-op") is a New York corporation with an address at 51 West 81st Street, New York, New York.

4.          Defendant Rudd Realty Management Corp. ("Managing Agent") is a New York corporation with an address at 545 Madison Avenue, New York, New York.

5.          Defendant Esther Zelmanovitz ("Zelmanovitz") is an adult individual and a resident of the State of New York with an address at 4 Park Circle, Cedarhurst, New York.

6.          Defendant Stanley Tischler ("Notary") is an adult individual and a resident of the State of New York with an address at 401 Broadway, New York, New York.

7.          Defendant Lois Ebin ("Buyer") is an adult individual and a resident of the State of New York with an address at 51 West 81st Street, New York, New York.

Jurisdiction

8.          The Court has original jurisdiction over this action, pursuant to 28 U.S.C. 1332(a), in that the matter in controversy arose between citizens of different States, and in that the amount in controversy exceeds $75,000, exclusive of interest and costs.

<u>Summary of the Complaint</u>

9.      At issue in this action is a unique and irreplaceable property: Apartment 8G in a residential, co-operative building located at 51 West 81st Street, New York, New York. By means of forgery and fraud, in which all Defendants were complicit to varying degrees, Plaintiff was stripped of ownership of this valuable property at a closing held on May 24, 2006.

10.      Plaintiff is 76 years old and is retired. Amy Ai is 53 years old and is a real estate broker. They have had no contact with each other for a decade.

11.      Plaintiff and Amy Ai purchased Apartment 8G in September, 1979, subject to the tenancy of a rent-stabilized or rent-controlled tenant. Two years later, Plaintiff and Amy Ai married. In 1996, they divorced. Apartment 8G is not mentioned in the judgment, and, after their divorce, Plaintiff and Amy Ai continued to own Apartment 8G as tenants in common.

12.      On January 17, 2006, Amy Ai signed a contract to sell Apartment 8G for $425,000. While the contract names him as co-seller, Plaintiff knew nothing of the sale and never consented to it. Amy Ai forged Plaintiff's signature to the contract in 10 places.

13.     On May 10, 2006, a durable power of attorney was prepared, whereby Plaintiff purportedly appointed Amy Ai as his attorney-in-fact. Plaintiff's signature on the power of attorney was forged.

14.     The forgery aside, the power of attorney was ineffective. None of the subdivisions, whereby a principal grants an agent enumerated powers, were initialed. Under Section 5-1501 of the General Obligations Law, the lack of initials rendered the power of attorney defective on its face.

15.     At a closing held on May 24, 2006, Amy Ai used the power of attorney to terminate Plaintiff's interest in Apartment 8G. She kept the entire net the proceeds to herself.

16.     At the closing, Amy Ai signed an affidavit swearing that she was Plaintiff's duly appointed agent and that the power of attorney was in full force and effect. The affidavit was perjurious.

17.     At no time from January 17, 2006, when the contract of sale was signed, through May 24, 2006, when the sale closed, did any Defendant make any effort to determine if Plaintiff consented to the sale of Apartment 8G, or even if Plaintiff is living.

18.     On June 9, 2006, at his residence in Pennsylvania, Plaintiff received a letter from the Managing Agent refunding maintenance for Apartment 8G. Upon asking the Managing Agent about the letter, Plaintiff learned that Apartment 8G had been sold on May 24, 2006, and that his interest had been terminated.

19.     Upon their involvement in the events that led to termination of Plaintiff's ownership of Apartment 8G, the Defendants, with exception of the Buyer, are jointly and severally liable to Plaintiff for damages.

20.     By this action, Plaintiff seeks damages i) against Amy Ai for forgery, fraud, misrepresentation, breach of fiduciary duty and conversion, ii) against Amy Ai's lawyer for legal malpractice, gross negligence and recklessness, iii) against the Co-op and the Managing Agent for gross negligence, recklessness, breach of fiduciary duty, breach of contract and breach of covenant of good faith and fair dealing and iv) against the Notary for negligence.

21.     Against the Buyer, Plaintiff seeks replevin, restoration and ejectment and the Co-op in the form of an order voiding the transfer of Apartment 8G and directing i) restoration of Apartment 8G to its prior condition ii) return to Plaintiff of the proprietary lease and shares appurtenant to Apartment 8G, and iii) ejectment of the Buyer from Apartment 8G.

<u>Amy Ai</u>

22.    Amy Ai is licensed by the State of New York as a real estate broker. She has been a broker for more than 20 years.

23.    Upon her license and real estate experience, Amy Ai is a sophisticated business person, familiar with contracts of sale, powers of attorney, transfer tax returns and the process whereby co-op apartments are purchased and sold in the City of New York.

24.    Amy Ai was married to Plaintiff from 1981 until 1996, when they were divorced by judgment entered in the Supreme Court, County of New York. The divorce judgment did not divest Plaintiff of his interest in Apartment 8G.

25.    Plaintiff and Amy Ai acquired Apartment 8G on September 27, 1979 and thereafter held Apartment 8G as tenants in common.

26.    From September 27, 1979 to May 23, 2006, Plaintiff was a shareholder of record of the 333 shares in the Co-op allocated to Apartment 8G.

27.    Amy Ai never applied for or received from any Court an order or judgment removing Plaintiff as an owner of Apartment 8G or authorizing the sale of Apartment 8G.

28.  On or about January 17, 2006, Amy Ai signed her name to a contract of sale, in which Amy Ai agreed to sell Apartment 8G to the Buyer for $425,000 ("Contract of Sale").

29.  On or about January 17, 2006, Amy Ai signed Plaintiff's name on the Contract of Sale.

30.  Plaintiff never authorized, empowered or instructed Amy Ai to sign his name on the Contract of Sale.

31.  Amy Ai signed Plaintiff's name on the Contract of Sale in a manner that made it appear that Plaintiff had personally signed the Contract of Sale.

32.  Amy Ai signed Plaintiff's name to the Contract of Sale with intent to terminate Plaintiff's interest in Apartment 8G and to convert for herself all proceeds of the sale of Apartment 8G.

33.  Amy Ai knew that Plaintiff was not aware of the Contract of Sale, and that Plaintiff did not consent to the sale of Apartment 8G.

34.  Amy Ai never informed Plaintiff of the Contract of Sale or her desire to sell Apartment 8G.

35.     Plaintiff never ratified the Contract of Sale, and Plaintiff never received any of the proceeds of the sale of Apartment 8G..

36.     On or about May 10, 2006, on Blumberg form M51, entitled "Durable General Power of Attorney" ("Power of Attorney"), Amy Ai hand-wrote "Brooks Banker P.O. Box 154 Rowland, PA 18457" and "Amy Banker 333 E 34th St NY NY 10016".

37.     By such hand-writing, Amy Ai intended the Power of Attorney to name Plaintiff as principal and herself as his attorney-in-fact.

38.     On May 10, 2006, the Power of Attorney was presented to the Notary in the lobby of 401 Broadway, New York, New York, and the Notary acknowledged on the Power of Attorney a signature of a person purporting to be Plaintiff.

39.     Plaintiff was not in the City of New York on May 10, 2006, Plaintiff never signed the Power of Attorney, Plaintiff never appeared before Notary and the signature that the Notary acknowledged on the Power of Attorney is not Plaintiff's signature.

40.     Amy Ai, or a person acting at Amy Ai's behest, forged Plaintiff's name on the Power of Attorney.

41.      Amy Ai, or a person acting at Amy Ai's behest, presented the Notary a document that falsely identified Amy Ai, or the person acting at Amy Ai's behest, as Plaintiff.

42.      As of May 10, 2006, Amy Ai knew that Plaintiff was not aware of the Power of Attorney, that Plaintiff had not appointed Amy Ai as his agent, that Plaintiff did not sign the Power of Attorney and that the signature on the Power of Attorney was forged.

43.      On May 24, 2006, Apartment 8G was sold to the Buyer at a closing held at 545 Madison Avenue, New York, New York ("Closing").

44.      At the Closing, Amy Ai tendered the Power of Attorney and represented that she was Plaintiff's attorney-in-fact.

45.      At the Closing, Amy Ai signed a document entitled "Affidavit That Power Of Attorney Is In Full Force" ("Affidavit").

46.      In the Affidavit, Amy Ai stated that Plaintiff had appointed her as his "true and lawful" attorney-in-fact.

47.     When she signed the Affidavit at the Closing, Amy Ai knew that the signature appearing on the Power of Attorney was forged and that Plaintiff had not appointed Amy Ai to act as his behalf for any purpose.

48.     At the Closing, Amy Ai instructed that the proceeds from the sale of Apartment 8G be paid to her and that no part of the proceeds be paid to Plaintiff.

49.     At the Closing, Amy Ai received four checks drawn to her, and not to Plaintiff, in the sum of $414,617 ("Checks").

50.     Amy Ai paid no part of the proceeds of the Checks to Plaintiff, and Amy Ai converted the $414,617.

51.     At the Closing, Amy Ai signed Plaintiff's name to New York State Form IT-2664, which is entitled "Nonresident Cooperative Unit Estimated Income Tax Payment Form" ("Nonresident Tax Form").

52.     On the Nonresident Tax Form, Amy Ai hand-wrote "no tax due" and "doesn't own property".

53.     When she completed the Nonresident Tax Form, Amy Ai knew that her statement "doesn't own property" was false.

54.     But for Amy Ai's actions, Plaintiff's interest in Apartment 8G would not have been terminated and Plaintiff would not have been damaged.

Esther Zelmanovitz

55.     Zelmanovitz is a lawyer admitted to practice in the State of New York.

56.     Commencing in or about January 2006, Zelmanowitz represented Amy Ai and Plaintiff in connection with the sale of Apartment 8G.

57.     Plaintiff never consented to Zelmanovitz's representation of him as an owner of Apartment 8G.

58.     Prior to June 9, 2006, Plaintiff never knew of Zelmanovitz or Zelmanovitz's representation of him as an owner of Apartment 8G.

59.     Zelmanowitz has never met Plaintiff, Zelmanowitz has never spoken to Plaintiff, and Zemanovitz has never written to Plaintiff or received a letter from Plaintiff.

60.     Zelmanovitz had a duty to determine whether Plaintiff wanted Zelmanovitz to represent his interest in Apartment 8G, whether Plaintiff desired to sell Apartment 8G and whether Plaintiff is living.

61.     Although she never received Plaintiff's permission to act as his attorney, Zelmanowitz rendered legal services that led to termination of Plaintiff's interest in Apartment 8G and to conversion by Amy Ai of the proceeds of the sale of Apartment 8G.

62.     In her capacity as attorney, Zelmanowitz reviewed the Contract of Sale the Power of Attorney, the Affidavit, the Checks and the Nonresident Tax Form.

63.     From her review of the Contract of Sale, the Power of Attorney and the Nonresident Tax Form, Zelmanovitz knew or should have known that i) a conflict of interest exited between Plaintiff and Amy Ai, ii) Zelmanovitz could not represent both Plaintiff and Amy Ai, and iii) Amy Ai was engaged in a fraud against Plaintiff.

64.     Zelmanovitz also knew or should have known that the Power of Attorney had not been completed in accordance with Section 5-1501 of the General Obligations Law and the Statute of Frauds, and that the Power of Attorney was ineffective to terminate Plaintiff's interest in Apartment 8G.

65.     Amy Ai informed Zelmanovitz that the Checks should be drawn to her and that Plaintiff's name should be omitted from the Checks.

66.     Upon Zelmanovitz's instructions, the Checks were drawn solely to Amy Ai and were delivered to Amy Ai at the Closing.

67.     Zelmanovitz aggravated Plaintiff's damages by refusing, after Plaintiff discovered that his interest in Apartment 8G had been terminated, to turn over to Plaintiff documents and information relating to the sale of Apartment 8G.

68.     Zelmanovitz furthered the fraud against Plaintiff by denying, after Plaintiff discovered that his interest in Apartment 8G had been terminated, that Zelmanovitz represented Plaintiff in the sale of Apartment 8G and by invoking attorney-client privilege on behalf of Amy Ai.

69.     The actions of Zelmanovitz in connection with termination of Plaintiff's interest in Apartment 8G were not professionally reasonable.

70.     But for the Zelmanovitz's actions, Plaintiff's interest in Apartment 8G would not have been terminated and Plaintiff would not have been damaged.

<u>51 West 81st Street Corp.</u>

71.     In 1979, the Co-op issued share certificate number 188, in which Plaintiff is named as a holder of the 333 shares allocated to Apartment 8G (the "Share Certificate").

72.     Upon Plaintiff's status as a shareholder, the Co-op owed Plaintiff a fiduciary duty.

73.     In 1979, the Co-op entered into a proprietary lease for Apartment 8G, in which Plaintiff was a lessee (the "Proprietary Lease").

74.     Upon Plaintiff's status as a lessee, the Co-op owed Plaintiff a contractual duty.

75.     Implied in the Proprietary Lease was a covenant of good faith and fair dealing.

76.     As to any matter after 1979, the Co-op neither sought nor obtained Plaintiff's written or oral consent.

77.     The Co-op consented to the transfer of Apartment 8G from Plaintiff to the Buyer by written consent dated April 19, 2006 ("Consent").

78.     The Co-op had a duty to determine whether Plaintiff had signed the Contract of Sale or the Power of Attorney, whether Plaintiff desired to sell Apartment 8G or whether Plaintiff is living.

79.     At no time did the Co-op inquire whether Plaintiff had signed the Contract of Sale or the Power of Attorney, whether Plaintiff desired to sell Apartment 8G or whether Plaintiff is living.

80.     The Co-op received a copy of the Power of Attorney from Zalmanovitz on May 16, 2006, eight days prior to the Closing.

81.     During the eight days prior to the Closing, the Co-op reviewed the Power of Attorney.

82.     Prior to the Closing, the Co-op knew or should have known that Plaintiff's initials did not appear on the Power of Attorney.

83.     Prior to the Closing, the Co-op knew or should have known that the Power of Attorney was ineffective under the General Obligations Law and the Statute of Frauds to terminate Plaintiff's interest in Apartment 8G.

84.     As of the Closing, the Co-op knew or should have known that Amy Ai was engaged in a fraud against Plaintiff.

85.     With actual or imputed knowledge that the Power of Attorney was ineffective and that Amy Ai was engaged in a fraud, the Co-op allowed the Closing to proceed and the Co-op terminated Plaintiff's interest in Apartment 8G.

86.     By letter dated June 15, 2006, Plaintiff demanded that the Co-op restore him as an owner of Apartment 8G. The Co-op, however, refused to restore Plaintiff as an owner of Apartment 8G.

87.     But for the Co-op's actions, Plaintiff's interest in Apartment 8G would not have been terminated and Plaintiff would not have been damaged.


Rudd Realty Management Corp.

88.     The Managing Agent acted as the Co-op's agent at the Closing.


89.     Upon Plaintiff's status as a shareholder of the Co-op, the Managing Agent owed Plaintiff a fiduciary duty and a contractual duty.


90.     The Closing was held in the Managing Agent's offices.


91.     Prior to the Closing, the Managing Agent had a duty to inquire whether Plaintiff had signed the Contract of Sale or the Power of Attorney, whether Plaintiff desired to sell Apartment 8G or whether Plaintiff is living.


92.     At no time did the Managing Agent inquire whether Plaintiff had signed the Contract of Sale or the Power of Attorney, whether Plaintiff desired to sell Apartment 8G or whether Plaintiff is living.


93.     The Managing Agent received a copy of the Power of Attorney from Zalmanovitz on May 16, 2006, eight days prior to the Closing.

94.      During the eight days prior to the Closing, the Managing Agent reviewed the Power of Attorney.

95.      Prior to the Closing, the Managing Agent knew or should have known that Plaintiff's initials did not appear on the Power of Attorney.

96.      Prior to the Closing, the Managing Agent knew or should have known that the Power of Attorney was ineffective under the General Obligations Law and the Statute of Frauds to terminate Plaintiff's interest in Apartment 8G.

97.      At the Closing, the Managing Agent did not request photographic identification of Plaintiff.

98.      At the Closing, the Managing Agent made no attempt to contact Plaintiff.

99.      At the Closing, the Managing Agent learned that Plaintiff resided in Pennsylvania.

100.      At the Closing, the Managing Agent received the original of the Power of Attorney.

101.      At the Closing, the Managing Agent reviewed of the Nonresident Tax Form.

102.     As of the Closing, the Managing Agent saw or should have seen on the Nonresident Tax Form that Amy Ai had hand-written "no tax due" and "doesn't own property".

103.     At the Closing, the Managing Agent reviewed the Checks.

104.     As of the Closing, the Managing Agent saw or should have seen that Plaintiff's name did not appear on the Checks.

105.     As of the Closing, the Managing Agent knew or should have known that Amy Ai was engaged in a fraud against Plaintiff.

106.     Had the Managing Agent reasonably performed its duties, Plaintiff's interest in Apartment 8G would not have been terminated and Plaintiff would not have been damaged.

<u>Stanley Tischler</u>

107.     The Notary is a Commissioner of Deeds of the City of New York.

108.     The Notary owes Plaintiff a statutory duty under Section 135 of the Executive Law.

109.	On May 10, 2006, the Notary, at his place of business in the lobby of 401 Broadway, New York, New York, notarized the Power of Attorney.

110.	Upon information and belief, the Power of Attorney was not signed before the notary, but already bore a signature.

111.	The Notary notarized the Power of Attorney without using reason diligence to determine the identity of the person who signed the Power of Attorney.

112.	But for the Notary's actions, Plaintiff's interest in Apartment 8G would not have been terminated and Plaintiff would not have been damaged.

<u>Lois Ebin</u>

113.	Prior to the Closing, the Buyer lived in the Co-op in an apartment other than Apartment 8G.

114.	At no time prior the Closing did the Buyer meet Plaintiff or communicate with Plaintiff in any manner.

115.	As of the Closing, the Buyer received a copy of Power of Attorney and the Nonresident Tax Form.

116.     As of the Closing, the Buyer knew or should have known that Plaintiff's initials did not appear on the Power of Attorney.

117.     As of the Closing, the Buyer knew or should have known that the Power of Attorney was ineffective to terminate Plaintiff's interest in Apartment 8G.

118.     At no time did the Buyer inquire whether Plaintiff had signed the Contract of Sale or the Power of Attorney, whether Plaintiff desired to sell Apartment 8G or whether Plaintiff is living.

119.     As of the Closing, the Buyer knew or should have known that Plaintiff's consent to the sale of Apartment 8G had not been obtained and that Plaintiff had not authorized Amy Ai to terminate his interest in Apartment 8G.

120.     As of the Closing, the Buyer received instructions that none of the Checks should be drawn to Plaintiff.

121.     At the Closing, the Buyer delivered to Amy Ai a check in the amount of $382,662.99 drawn only to Amy Ai.

122.     With knowledge that the Power of Attorney was forged and ineffective against Plaintiff, the Buyer conducted substantial work in Apartment 8G.

123.     By letter dated June 21, 2006, Plaintiff demanded that the Buyer restore him as an owner of Apartment 8G.

124.     The Buyer refused to restore Plaintiff as an owner of Apartment 8G.

<u>Claims Against Amy Ai</u>

125.     On grounds of forgery, fraud, misrepresentation, breach of fiduciary duty and conversion, Plaintiff is entitled to damages against Amy Ai in the amount of $425,000 plus punitive damages in the amount of $1,700,000.

<u>Claims Against Zelmanovitz</u>

126.     On grounds of legal malpractice, gross negligence and recklessness, Plaintiff is entitled to damages against Zalmanovitz in the amount of $425,000 plus punitive damages in the amount of $850,000.

<u>Claims Against 51 West 81st Street Corp</u>.

127.     On grounds of gross negligence, recklessness, breach of fiduciary duty, breach of contract and breach of the covenant of good faith and fair dealing, Plaintiff is entitled to damages against the Co-op in the amount of $425,000. Upon the Proprietary Lease and Section 234 of the Real Property Law, Plaintiff is entitled to reasonable attorney's fees and expenses against the Co-op in an amount to be determined at trial.

<u>Claims Against Rudd Realty Management Corp</u>.

128.     On grounds of gross negligence, recklessness, breach of fiduciary duty and breach of contract, Plaintiff is entitled to damages against the Managing Agent in the amount of $425,000.

<u>Claims Against Stanley Tischler</u>

129.     On grounds of negligence and Section 135 of the Executive Law, Plaintiff is entitled to damages against the Notary in the amount of $425,000.

<u>Claims Against Lois Ebin and 51 West 81st Street Corp.</u>

130.     Plaintiff is entitled to an order voiding the transfer of Apartment 8G, requiring that Apartment 8G be restored to the condition in which Defendant Lois Ebin received it, returning Plaintiff as holder of the shares and proprietary lessee appurtenant to Apartment 8G, and ejecting Defendant Lois Ebin from Apartment 8G.

Wherefore, Plaintiff demands judgment against Defendants as follows:

1.  against Defendant Amy Ai, judgment in the amount of $425,000 plus punitive damages in the amount of $1,700,000;

2.  against Defendant Esther Zelmanovitz, judgment in the amount of $425,000 plus punitive damages in the amount of $850,000;

3. against Defendant 51 West 81st Street Corp., judgment in the amount of $425,000 plus attorney's fees and expenses in an amount to be determined at trial;

4. against Defendant Rudd Realty Management Corp., judgment in the amount of $425,000;

5. against Defendant Stanley Tischler, judgment in the amount of $425,000;

6. against Defendant Lois Ebin and Defendant 51 West 81st Street Corp., judgment voiding the transfer of Apartment 8G, requiring that Apartment 8G be restored to the condition in which Defendant Lois Ebin received it, returning Plaintiff as holder of the shares and proprietary lessee appurtenant to Apartment 8G, and ejecting Defendant Lois Ebin from Apartment 8G;

together with interest, costs and expenses against Defendants as allowed by law.


Dated:      New York, New York
            June 28, 2006

                                    _____/s/_____
                                    Brooks Banker, Jr. (BB-1611)
                                    551 Fifth Avenue, Suite 2800
                                    New York, New York 10176
                                    (212) 972-0534

                                    Attorney for Plaintiff